UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:01-CR-93-TS |
| | ) | |
| TODD ANDREWS | ) | |

**OPINION AND ORDER**

After affirmance of his conviction for aiding and abetting armed bank robbery, the Defendant, Todd Andrews, petitioned for writ of habeas corpus under 28 U.S.C. § 2255. The government responded on March 1, 2007, and the Defendant replied on March 26, 2007.

**BACKGROUND**

On November 28, 2001, two men robbed at gunpoint the Midwest American Federal Credit Union in Fort Wayne, Indiana. An investigation immediately following the robbery led police to the Defendant, who had two large stacks of money and gave conflicting stories about his actions that morning. In his third account of the morning's events, he stated that two men used his car to rob a bank and when they came back, gave him two stacks of money, a bag that had money straps in it, and his shoes, which they had also borrowed. Police found money wrappers burning on a grill on the Defendant's apartment balcony. The Defendant then agreed to be interviewed at the police department. His interview was videotaped.

The Defendant was charged on December 17, 2001, in a two-count Indictment with armed bank robbery (18 U.S.C. § 2113(a) and (d)) and carrying and using a firearm during or in relation to a crime of violence (18 U.S.C. § 924(c), or aiding and abetting the same (18 U.S.C. § 2).

During the pretrial proceedings, the Defendant unsuccessfully moved to suppress the money wrappers that police found burning on his apartment balcony and his videotaped interrogation.

The government's theory of the case during trial was that the Defendant aided and abetted the Midwest American Federal Credit Union robbery, in part, by letting the robbers use his car. On May 20, 2004, a jury found the Defendant guilty of both counts of the Indictment. Subsequently, upon motion of the government, the Court stayed all sentencing proceedings until after the Supreme Court issued a decision in *United States v. Booker*. On March 11, 2005, the Court conducted a sentencing hearing. The hearing was carried over to March 29 to consider additional evidence and argument regarding § 3553(a) sentencing factors. The Court determined that the advisory guideline range for Count I was 51 to 63 months, which comported with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2), including the need to avoid unwanted disparity in sentencing for those who aid and abet the violent offense of armed bank robbery. The Court sentenced the Defendant to 57 months imprisonment on Count I. For Count II, the Court imposed the statutory mandatory minimum sentence of 7 years, to run consecutive to the term imposed for Count I. The Court also ordered restitution.

The Defendant timely appealed, and the Seventh Circuit affirmed the decision of the district court in a published opinion, *United States v. Andrews*, 442 F.3d 996 (7th Cir. 2006). The court held that exigent circumstances justified police officers' entry onto the balcony of the Defendant's apartment without a warrant and that the evidence presented at trial was sufficient to support a conviction for aiding and abetting the use of a firearm during a crime of violence.

On November 7, 2006, the Defendant filed his petition pursuant to 28 U.S.C. § 2255 and

memorandum in support. On March 1, 2007, the government responded and on March 26, the Defendant replied.

## DISCUSSION

Section 2255 allows a person convicted of a federal crime to vacate, set aside, or correct his sentence. This relief is available only in limited circumstances, such as where an error is jurisdictional, of Constitutional magnitude, or there has been a "complete miscarriage of justice." *See Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). The Defendant contends that this Court should order a hearing and vacate his conviction based on the following: (1) his trial counsel was ineffective for failing to investigate and to call certain witnesses; (2) the introduction at trial of his videotaped interview with police violated his Sixth Amendment confrontation clause rights; (3) his appellate counsel was ineffective for failing to raise the confrontation clause issue on appeal; (4) the district court improperly sentenced him using mandatory sentencing guidelines; (5) the district court's order of restitution violated his Fifth and Sixth Amendment rights; and (6) his appellate counsel was ineffective for failing to raise *Booker* issues on appeal.

The government argues that the Defendant's claims are procedurally barred and, in any event, do not succeed on their merits.

The law is well settled that failure to raise constitutional issues on direct appeal bars consideration of the issues under § 2255 unless cause for the procedural default and prejudice arising from it are shown. *Menzer v. United States*, 200 F.3d 1000, 1005 (7th Cir. 2000); *Rosenwald v. United States*, 898 F.2d 585 (7th Cir. 1990). Establishing that appellate counsel

3

was ineffective for not raising a claim constitutes cause to justify procedural default. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996); *Rosenwald*, 898 F.2d at 587.

In seeking to prove that his counsel rendered ineffective assistance, the Defendant "bears a heavy burden." *Jones v. Page*, 76 F.3d 831, 840 (7th Cir. 1996) (citation omitted). To establish ineffective assistance of counsel, a petitioner must show that: (1) his attorney's performance "fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984); and (2) there is a reasonable probability that "but for counsel's unprofessional errors the result of the proceeding would have been different," *Id.* at 694. *See also Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (applying *Strickland* test to claim that appellate counsel rendered ineffective assistance). "A failure to establish either prong results in a denial of the ineffective assistance of counsel claim." *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002) (citation omitted).

A.      **Failure to Investigate and Call Witnesses**

The Defendant asserts that his trial counsel rendered ineffective assistance when he "failed to conduct a reasonable investigation into K-9 Officer Joel Squadrito, Crime Scene Technician Mike Burris and Crime Scene Technician Cinda Curtis and by failing to call them as witnesses in support of his defense." (Mem. at 12.) The Defendant argues that the incident reports written by these individuals contradict the government's theory of the case.

Because the Defendant postponed raising the issue of trial counsel's effectiveness until the collateral stage, he must have a valid reason for the postponement. *Guinan v. United States*, 6 F.3d 468, 472 (7th Cir. 1993). The Seventh Circuit has noted three valid reasons: (1) that the

4

defendant was represented by the same counsel at trial and on appeal; (2) that the claim could not be developed without facts outside the trial record; or (3) "that at the time of taking the appeal it had reasonably appeared that new evidence might be necessary, though it has since become apparent that the trial record itself was the only evidence that could be presented in support of the claim." *Id.*; *see also United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1991) (noting that a defendant is not barred from bringing an ineffective assistance of counsel claim for the first time in a post-conviction proceeding if the claim is based on extrinsic evidence).

The Defendant did not have the same counsel at trial and on appeal. However, he does point to facts outside the trial record with the submission of the incident reports of Squadrito, Burris, and Curtis. The government does not argue that the ineffective assistance of trial counsel claim is procedurally barred, and the Court will consider its merit.

**1.     *K-9 Officer Squadrito***

The Defendant claims that evidence gathered by Squadrito, as memorialized in his incident report, does not corroborate the government's theory that the bank robbers used his car to facilitate the robbery. According to Squadrito's report, his police dog followed a track from the back door of the credit union to an apartment complex near the credit union. The Defendant argues that this contradicts the theory that his car was used in the robbery.

The Court does not find that trial counsel rendered ineffective assistance for failing to elicit testimony from Officer Squadrito. The Defendant has not presented any evidence that his counsel was unaware of Squadrito's report or its implication. Therefore, the Court must presume that not introducing the tracking evidence was a strategic decision that cannot be second guessed

on collateral attack. *See Strickland*, 466 U.S. at 689 (noting that a reviewing court must indulge a strong presumption that the challenged actions at trial were sound trial strategy and, therefore, not evidence of ineffective assistance); *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994) ("Usually, counsel's decision not to call a witness is a tactical decision not subject to review."). The Defendant has not established that his counsel failed to use reasonable professional judgment when he decided not to call Squadrito to testify.

      Second, the Defendant has not established a reasonable probability that this evidence would have had any effect on the outcome of his trial. The flaw in the Defendant's argument is that, even if Squadrito testified about the tracking, the jury could have still found that the Defendant's car was used in the robbery. If his car was not driven to the bank's parking lot, the jury could have determined, in light of other evidence in the case, that the Defendant's car was positioned a short distance away from the credit union waiting for the robbers who fled on foot. The jury heard Detective Vaughn's testimony that the Defendant told him that he agreed to lend his car to two men and he knew the car would be used to rob a bank. The jury also heard the Defendant admit on videotape that he arranged to meet two men at a designated location where they would take his car and his shoes, rob the credit union, and then come back. Shortly after the robbery, the Defendant was found with two large stacks of bills. Money wrappers were burning on the grill on his back balcony. He also admitted that he discarded the shoes he lent to the two men because he thought they had been used in a robbery. Thus, even if the evidence did not reveal the exact manner in which the car was used, the jury had sufficient evidence to find that the Defendant aided and abetted the robbery. The Defendant has not established a reasonable probability that Officer Squadrito's testimony would have made his theory any more believable

to the jury.[1]

2.  *Officer Burris*

The Defendant contends that Crime Scene Technician Burris's incident report also reveals that the perpetrators fled on foot to the nearby apartment complex. The decision not to introduce this testimony does not amount to ineffective assistance of counsel for the same reasons that it was not objectively unreasonable for counsel to decide not to use Officer Squadrito's findings.

The Defendant also argues that Burris's report that he collected $570, consisting of $240 from the Defendant's car and $330 from Detective Vaughn, corroborates the Defendant's testimony about the amount of money that he had and contradicts Vaughn's in-court recollection that he removed $950 from the Defendant's pocket. Again, trial counsel's failure to use Burris's testimony to corroborate the amount of money does not meet either prong of the *Strickland* test. Not only did the Defendant cross-examine Detective Vaughn about the money using Burris's report, but the amount of money recovered from the Defendant's car was later stipulated. The parties filed a stipulation during trial, which the judge read to the jury:

> Comes now the United States of America by Assistant United States Attorney David H. Miller and Defendant, Todd Andrews, by Counsel, Mark A. Thoma. They hereby file of record a stipulation of fact in the above referenced case. The parties hereby agree and stipulate the following fact be admissible at trial. The actual amount of United States currency located in Mr. Andrews' car was two hundred and forty dollars, as documented by Fort Wayne Police Department Technician Cinda Curtis and Fort Wayne Police Department Sergeant M. Burris.

---

[1] The Defendant's defense was that his admissions to police implicating himself were not truthful and that he actually received the money as part of a drug transaction.

(Tr., Vol. ii at 19.) The Defendant's counsel addressed the stipulation in his closing argument:

> The money that was found on Todd Andrews. The Court's going read to you an instruction regarding stipulations. Basically, that instruction will say the government and—and the defendant have entered into stipulations as to facts. And that stipulation was there was $240 that was found in Todd Andrews car, okay? Now, at one point Officer Vaughn, Detective Vaughn testified that there was $5,000 that was located in the car. Clearly, he was mistaken about that, and that stipulation is to the effect that you need to believe that that $240 was what was really found in the car. And . . . if you heard any evidence or testimony to the contrary, you should disregard it. So we have a given that there's $240 in Todd's car.

(Tr., Vol. iii at 33–34.) The jury was instructed to disregard any testimony that contradicted the stipulation. (Tr., Vol. iii at 61.) Given the evidence and argument presented to the jury regarding the amount of money revcovered, and Vaughn's mistake about the amount, there is no reasonable possibility that Burris's testimony on this same subject would have changed the outcome of the trial.

### 3.     *Crime Scene Technician Cinda Curtis*

The Defendant also posits that testimony from Technician Cinda Curtis would have changed the outcome of his case. He argues that she could have testified about the evidence she recovered, such as "whether the footwear impressions matched the shoes found at the apartment complex, footwear impression size, make, model, color of shoes found, how many different sets of foot prints she observed." (Mem. at 14.) The Defendant does not explain how his counsel failed to investigate and does not indicate what kind of evidence an investigation would have turned up or how it would have helped his defense. A § 2255 petitioner alleging ineffective assistance of counsel due to counsel's failure to investigate has the "burden of providing . . . a comprehensive showing as to what the investigation would have produced." *Hardamon v. United*

*States*, 319 F.3d 943, 951 (7th Cir. 2003) (citation marks omitted); *United States ex rel. Simmons v. Grammley*, 915 F.2d 1128, 1133–34 (7th Cir. 1990) (dismissing cursory and speculative claim that counsel failed to investigate defenses). The Defendant has not attempted to meet this burden and he cannot sustain the claim that his counsel was ineffective for failing to investigate.

**B.      Videotape**

The Defendant maintains that admission of the videotape of his police interview violated his constitutional rights. However, the Defendant did not raise this issue in his direct appeal of his conviction. Therefore, this claim is procedurally barred unless the Defendant can demonstrate cause for the procedural default as well as actual prejudice from the failure. *Menzer*, 200 F.3d at 1005.

**1.      *Confrontation Clause***

The Defendant argues that the confrontation clause of the Sixth Amendment barred the government from playing the video recording of his interview with police officers because some of the interviewing officers, whose statements are heard on the tape, never testified at trial. The Defendant cites *Crawford v. Washington*, 541 U.S. 36, 68 (2004), in support of his position. In *Crawford*, the Supreme Court held that testimonial hearsay statements are not admissible at trial unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination.

*Crawford* is not applicable to the videotape of the Defendant's police interview because neither the Defendant's own statement nor the statements of the interviewing officers are

hearsay. *See United States v. Tolliver*, 454 F.3d 660, 665–66 (7th Cir. 2006) (upholding admission of tape recorded conversation between the defendant and a confidential informant because the prohibition described in *Crawford* only applies to testimonial hearsay statements). The Defendant's own statements are not hearsay under Federal Rule of Evidence 801(d)(2)(A), which specifically excludes a party's own statements from the definition of hearsay. The officer's statements are not hearsay because they were not offered for their truth, but only to provide context for the Defendant's admissible statements. *Tolliver*, 454 F.3d at 666 ("Statements providing context for other admissible statements are not hearsay because they are not offered for their truth.").

In addition, statements that provide context do not implicate the Sixth Amendment because the declarant is not a witness. *Id.* (stating that "the admission of such context evidence does not offend the Confrontation Clause because the declarant is not a witness against the accused"); *see also United States v. Nettles*, 476 F.3d 508, 518 (7th Cir. 2007) (holding that admission of confidential informant's recorded conversation with the defendant did not violate the confrontation clause because informant's statements only provided context to the defendant's admissions). The record does not reveal that the officers who interviewed the Defendant were "witnesses" for Sixth Amendment purposes.

The Court also notes that trial counsel was free to, and did, argue that the officer's statements were not true, but were an effort to get more information from the Defendant. (Tr., Vol. iii at 42.) Counsel emphasized the Court's Instruction Number 13, which informed the jury that it was not improper for law enforcement officers to misrepresent facts about potential evidence against a person when talking with that person. (*Id.*) This is consistent with the fact that

10

the interviewing officers' statement were not offered for their truth and, thus, did not implicate the holding in *Crawford* or the Sixth Amendment confrontation clause.

### 2.     *Effective Assistance of Appellate Counsel*

The Defendant argues that his appellate counsel was ineffective for failing to raise the confrontation clause issue on appeal. However, a challenge to the admissibility of the videotape on confrontation clause grounds would not have been successful if raised on direct appeal. "Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996). Because the Defendant cannot establish that appellate counsel's performance was deficient or that he was prejudiced by counsel's representation his claim of ineffective assistance of appellate counsel fails both on its merits and as a means of overcoming the procedural bar to arguing that admission of the videotape entitles him to relief under § 2255.

### C.     Sentencing Issues

The Defendant submits that the sentencing issues he raises in his habeas petition were not raised on appeal because his counsel rendered ineffective assistance by failing to raise them. He contends that counsel's error resulted in actual prejudice because he received a term of imprisonment that violates the Constitution.

### 1.     *Factual Findings—Preponderance of the Evidence*

The Defendant argues that, because the district court used facts that it found by a

preponderance of the evidence to increase his base offense level, the imposed sentence violates his Sixth Amendment right to a jury trial. At sentencing, the Court found that a two-level increase under U.S.S.G. § 2B3.1(b)(1) was appropriate because money was taken from a financial institution. The Court also found that the testimony presented at the sentencing hearing was sufficient for it to find, by a preponderance of the evidence, that the loss incurred by Midwest American Credit Union was $119,450. Therefore, the Court applied a two level increase to the base offense level pursuant to U.S.S.G. § 2B3.1(b)(7). Citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004), the Defendant submits that such findings were required to be charged in the Indictment and proven to a jury beyond a reasonable doubt.

Contrary to the Defendant's assertions, the Court is not limited to consideration of only those facts that were presented, and proven, to a jury beyond a reasonable doubt.  As Judge Easterbrook explained in *McReynolds v. United States*,

> *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of *Booker* held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical matter, then, [defendants'] sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system.

397 F.3d 479, 481 (7th Cir. 2005). The calculation of the advisory guideline range is no different than it was before *Booker* and requires district judges to "resolve disputed factual issues, see Fed. R. Crim. P. 32(i)(3)(B); U.S.S.G. § 6A1.3(b) (2004), determine relevant conduct by a preponderance of the evidence, and apply the appropriate sentence enhancements in order to compute the advisory guidelines sentence range." *United States v. Robinson*, 435 F.3d 699,

700–01 (7th Cir. 2006). A sentencing judge is required to resolve factual disputes that are essential to a properly calculated guideline range. *Robinson*, 435 F.3d at 702 (remanding case to district judge for determination of factual issue).

The Defendant's Sixth Amendment claim, even after *Booker*, is without merit. "With the guidelines now merely advisory, factfindings that determine the guidelines sentence do not determine the actual sentence, because the sentencing judge is not required to impose the guidelines sentence; and so the Sixth Amendment is not in play." *United States v. Dean*, 414 F.3d 725, 730 (7th Cir. 2005).

**2.**     *Mandatory Minimum Sentence*

The Defendant argues that the district court improperly sentenced him using mandatory sentencing guidelines as opposed to advisory guidelines when it sentenced him to 84 months imprisonment for Count II, carrying or using a firearm during or in relation to a crime of violence in violation of 18 U.S.C. § 924(c). He contends that the 84-month sentence for Count II was unreasonable in the absence of an applicable advisory range and without a specific finding by the jury that he carried, used, fired, or brandished a firearm.

The Defendant's argument is without merit because, while the sentencing guidelines are advisory, mandatory minimum sentences set forth by statute are not. "Courts may not apply § 3553(a) to reduce a statutory mandatory minimum sentence." *United States v. Duncan*, 479 F.3d 924, 930 (7th Cir. 2007) (citing *United States v. Roberson*, 474 F.3d 432, 436 (7th Cir. 2007)). In *Roberson*, the Seventh Circuit held that § 3553(a), as a general statute, could not be "understood

13

to authorize courts to sentence below minimums specifically prescribed by Congress." 474 F.3d at 436. The court held that this was the rule when the guidelines were mandatory and remained the rule after *Booker*. Thus, the sentencing judge in *Roberson* was required to determine the proper sentence for bank robbery entirely independent of the § 924(c)(1) mandatory minimum that applied. *Id.* at 437.

> When a defendant is subject to a mandatory minimum under 18 U.S.C. § 924(c)(1), the district court must calculate the sentence for the defendant's other offenses without regard to the mandatory minimum sentence. Although the sentence as a whole must be reasonable, the district court may not reduce the sentence for an underlying offense solely because the defendant is subjected to a statutory add-on under 18 U.S.C. § 924(c)(1), as doing so effectively reduces the mandatory minimum sentence.

*Duncan*, 479 F.3d at 930 (citations omitted). The Court's treatment of § 924(c)(1) as mandatory did not violate the Defendant's rights.

The Plaintiff also argues that because the jury did not find that the principals who committed the robbery brandished a gun, as distinguished from used or carried it, the Court could not sentence him on this basis without violating the rule set forth in *Apprendi*. Section 924(c)(1) assigns increasingly lengthy mandatory minimum sentences depending on the seriousness of the firearm's role during the crime. Brandishing a firearm is considered more serious than using or carrying it. 18 U.S.C. § 924(c)(1)(A)(i) and (ii). Discharging the firearm is more serious still. 18 U.S.C. § 924(c)(1)(A)(iii). *Apprendi* holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," 530 U.S. at 490.

The rule in the Seventh Circuit is that *Apprendi* is not applicable to statutory mandatory minimum sentences, like those found in § 924(c)(1). *United States v. Watts*, 256 F.3d 630,

14

634–35 (7th Cir. 2001). In *Watts*, the indictment did not specifically charge the defendant with brandishing a gun. Nonetheless, *Apprendi* did not prevent the district court from determining whether the defendant brandished his firearm during a robbery, thereby triggering § 924(c)(1)'s seven-year mandatory minimum. *Id.*; *see also United States v. Williams*, 238 F.3d 871, 877 (7th Cir. 2001) ("[W]hen a defendant is sentenced to a term of imprisonment within the statutory maximum for the crime of which he was convicted, '*Apprendi* is beside the point'") (quoting *Talbott v. Indiana*, 226 F.3d 866, 869 (7th Cir. 2000)). These holdings were confirmed when the Supreme Court explained that, "as a matter of statutory interpretation, § 924(c)(1)(A) defines a single offense. The statute regards brandishing and discharging as sentencing factors to be found by the judge, not offense elements to be found by the jury." *Harris v. United States,* 536 U.S. 545, 556 (2002) (distinguishing facts that increase the mandatory minimum from those that extend a defendant's sentence beyond the maximum authorized by the jury's verdict). The Court held that a judicial finding of brandishing does not violate the constitution and need not be "alleged in the indictment, submitted to the jury, or proven beyond a reasonable doubt." 536 U.S. at 568.

Although the Court's finding that the firearm was brandished increased the mandatory minimum, the Defendant was not sentenced above the statutory maximum. Therefore, his sentence did not implicate *Apprendi*, did not violate the Constitution, and is not grounds for habeas relief.

**3.     *Restitution Order***

The Defendant argues that the district court's order of restitution qualifies as punishment

15

and violated his Fifth and Sixth Amendment rights. He also complains that the amount of loss was not charged in the Indictment and was not found by a jury. The Defendant relies on *Booker* and *Apprendi* to support his arguments.

First, the Defendant has not established that the amount of restitution ordered was more than the amount that was stolen during the robbery of which he was convicted of aiding and abetting. *See United States v. Belk*, 435 F.3d 817, 819 (7th Cir. 2006) (stating that restitution is limited to the loss caused by the crime). Second, the jury was not required to determine the amount of loss, either as a sentencing factor or for purposes of restitution. *Id.* (finding that "restitution lacks a 'statutory maximum' and the whole *Apprendi* framework (of which *Booker* is an instance) therefore is inapplicable"). Accordingly, the Defendant's challenge to the order of restitution is without merit.

### 4.     *Assistance of Appellate Counsel*

Because "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel," *Stone v. Farley*, 86 F.3d at 717, the Defendant's claim that his appellate counsel rendered ineffective assistance for failing to challenge his sentence is denied.

## D.     **Evidentiary Hearing**

The Defendant requests that a hearing be ordered to elicit testimony from the officers who did not testify at his trial, as well as from his trial and appellate counsel. A court need not

16

grant an evidentiary hearing in all § 2255 cases. *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). While a court must grant a hearing if the petitioner alleges facts that, if proven, would entitle him to relief, no hearing is required where the record conclusively shows that the Defendant is entitled to no relief. *Id.* In addition, the threshold determination that a habeas petition has alleged facts justifying a hearing requires the petitioner's sworn affidavit showing what specific facts support his assertions. *Galbraith v. United States*, 313 F.3d 1001, 1009–10 (7th Cir. 2002). The Defendant does not indicate what facts an evidentiary hearing would reveal, much less support any such assertions with a sworn affidavit.

The Petition does not support the Defendant's request for an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [DE 238] is **DENIED**.

SO ORDERED on June 15, 2007.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

17